SAMUEL VON WIEN, Respondent, *v.* THE SCOTTISH UNION AND
NATIONAL INSURANCE COMPANY, Appellants.

In an action upon a policy of fire insurance, it appeared that plaintiff employed one S. to procure for him $5,500. of insurance. S. employed R. who procured five policies of $1,100 each, issued by different companies; these he delivered to plaintiff. They were issued at different dates, defendant's being one of the last issued. Subsequently plaintiff paid sufficient to pay the premiums upon three of the policies, with which R. paid the premiums on the three policies first issued, leaving the premiums on defendant's policy, and one other, unpaid. Neither plaintiff nor S. knew which of the policies had been paid when S. called upon plaintiff for the balance of the unpaid premiums. This he declined to pay, stating he had insurance enough, and did not want the policies, and handed back to S. two policies; he took them and ordered them cancelled. R. discovered that they were two of the policies the premiums of which had been paid; he reported to defendant plaintiff's refusal to pay and that he had returned two of the said policies by mistake. These R. promised to exchange, and he requested T, who was authorized by defendant to cancel policies, to mark off the one issued by it, which he assented to. Plaintiff, on being asked for the two policies which had not been paid for, promised to get them and give them to R. and pay the premium for the time they had run, if R. would deliver back the two paid policies. The goods were destroyed by fire the next day. The trial court found that prior to the fire, the insurance existing by virtue of the policy in suit was duly terminated, and directed judgment dismissing the complaint on the merits. *Held*, no error; that it appeared to be plaintiff's intention to surrender the policies on which the premium had not been paid, and to retain the others, and in handing over the two paid policies he made a mistake which the courts would rectify; and that S. and R. in doing what they did to have the policy in suit cancelled, merely carried out his directions.

Where, on the trial of an action by the court, the testimony is conflicting and the judgment of the trial court is reversed by the General Term upon the facts, as the trial court has the advantage of seeing and hearing

.the witnesses, its determination as to their credibility will be taken upon appeal to this court, and the evidence will be examined simply for the purpose of determining whether it is sufficient to authorize its findings. *Von Wien* v. *S. U. & N. Ins. Co.* (22 J. & S. 276), reversed.

(Argued December 3, 1889; decided December 20, 1889.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made March 2, 1887, which reversed a judgment in favor of defendant, entered upon a decision of the trial court without a jury, and ordered a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Wm. A. Jenner* for appellant.    It will be presumed in this court, in *support* of the judgment of the trial court, that the latter found such facts *in addition to those specified* in its decision, as are essential to *sustain* the judgment, provided there was evidence to warrant the finding of such additional facts. (*Oberlander* v. *Spiers*, 45 N. Y. 175; *Townsend* v. *Bargy*, 57 id. 665; *Meyer* v. *Lathrop*, 73 id. 315; *Emerson* v. *City of Syracuse*, 100 id. 577–584; *Coleman* v. *S. A. R. R. Co.*, 38 id. 201; *Valentine v. Connor*, 40 id. 248; *Oberlander* v. *Spiers*, 45 id. 175; *Meyer* v. *Lathrop*, 73 id. 315.) The reversal, however, having been on the facts, all the *facts* and every question of fact and law are before this court, in the same manner and to the same extent as they were before the General Term. (*Johnson* v. *Youngs*, 65 N. Y. 599; *Godfrey* v. *Moser*, 66 id. 250; *Sickles* v. *Flanagan*, 79 id. 224; *Knickerbocker* v. *Nelson*, 78 id. 137–143; *Van Wyck* v. *Walters*, 81 id. 352; *Schultz* v. *Hoagland*, 85 id. 464; *Crane* v. *Bandonine*, 55 id. 256.) The contract of insurance could be discharged by parol. The surrender of policies and indorsement of the cancellation thereon were not requisite.    (*Stone* v. *F. Ins. Co.*, 105 N. Y. 543; *Grace* v. *A. C. etc., R. R. Co.*, 109 U. S. 278; *Herman* v. *N. etc., R. R. Co.*, 100 N. Y. 411; *Van Valkenburgh* v. *L. I. Co.*, 51 id. 465.)

*Beuno Loewey* for respondent.    The policy in suit was of binding effect, although the premium had never been paid, and by its terms it could be cancelled only by the act of

the assured or upon due notice given to him on the part of the company. (*Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171; *Boehen* v. *W. C. Ins. Co.*, 35 id. 131; *Bennett* v. *M. F. Ins. Co.*, 14 Blatch. 422; 20 J. & S. 495.) The agency of the broker who procured the policies from defendant ceased with the delivery by him of the policies to plaintiff. The authority to procure the insurance did not carry with it any implied authority to destroy or cancel the policies when once procured. (*Herrman* v. *N. F. Ins. Co.*, 100 N. Y. 411; *Von Wein* v. *S. U. etc., Ins. Co.*, 20 J. & S. 490, 493.) The judgment of the trial court cannot be sustained upon the theory either of a ratification on the part of the plaintiff of the unauthorized cancellation of the policy, or of notice to the plaintiff on the part of the company of its intention to cancel. (*Burnap* v. *Nat. Bank*, 96 N. Y. 125, 126; *Bd. of Super.* v. *Clark*, 92 id. 391; *Tabbin* v. *Kalbfleisch*, 52 id. 28; *Van Slyke* v. *Hyatt*, 46 id. 259; *Nixon* v. *Palmer*, 8 id. 401; *Lipman* v. *N. F. Ins. Co.*, 48 Hun, 503, 508; *Karelsen* v. *S. F. Ins. Co.*, 16 N. Y. S. R. 239.) The claim of the appellants, for the first time advanced upon the appeal, that if they have failed in their proof of the cancellation of the policy by the assured, the court should find a notice of cancellation by the company is entirely untenable. (*Rowan* v. *Hyatt*, 45 N. Y. 138.) The rule of law regarding cases reversed by the General Term upon the facts as announced by this court, is that the General Term must assume the responsibility of examining the whole case and determine where the truth lies. (*Moran* v. *Mc Larty*, 75 N. Y. 25; *Godfrey* v. *Moser*, 66 id. 250.) The respondent is entitled to sustain the reversal by the General Term by showing any error of law which is fatal to the judgment, whether made the reason of the action by the General Term, or whether wholly unnoticed by it. (*Ward* v. *Craig*, 87 N. Y. 550; *Krekeler* v. *Thaule*, 73 id. 668; *Mackey* v. *Lewis*, 73 N. Y. 382; *Powell* v. *Tuttle*, 3 id. 396; *Lewis* v. *Ingersoll*, 3 Abb. Ct. App. Dec. 60; *Anderson* v. *R. W. & O. R. R. Co.*, 54 N. Y. 334, 340, 341; Greenleaf on Evidence, § 113; *Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131.)

HAIGHT, J. This action was brought upon a policy of insurance to recover the amount of loss sustained by reason of a fire.

The policy was issued September 28, 1883, by Lothrop & Scott, who were the agents of both the defendant and the Lion Fire Insurance Company. The fire occurred on the 29th day of November, 1883. It appears that the plaintiff employed one Victor Spitzer to procure $5,500 of insurance upon his stock of goods, and that Spitzer procured one John H. Rieger to procure such insurance; that thereupon Rieger procured five policies of insurance each in the sum of $1,100 to be issued by different companies, one of which is the policy in suit, and delivered them to Spitzer who delivered them to the plaintiff. These policies were issued at different dates, that of the defendant and of the Lion Fire Insurance Company being the last that were issued. The premium upon these policies was thirty-three dollars each, amounting in the aggregate to $165. Subsequently the plaintiff delivered to Spitzer $100 to pay upon the premiums and Spitzer delivered ninety-nine dollars thereof to Rieger who paid the premium upon three of the five policies which were first issued, leaving the premium on the policies issued by the defendant and the Lion Fire Insurance Company unpaid. It further appears that numerous demands were made upon the plaintiff to pay the remaining sixty-five dollars due and owing for premiums upon these policies, but that the amount had not been paid at the time of the fire.

The trial court found as facts that " on or about November 26, 1883, the plaintiff, by his agent duly authorized thereto, informed the defendant that the plaintiff did not wish the said insurance. That on or about November 27, 1883, by agreement between Mr. Talbot, duly authorized on behalf of the defendant, and the said Rieger, duly authorized on behalf of the plaintiff, the said insurance existing by virtue of the policy mentioned in the complaint in this action was duly terminated and the said insurance ceased," and, as a conclusion of law, that the defendant was entitled to a judgment dismissing the complaint upon the merits.

The plaintiff excepted to the findings of fact above quoted, and on review by the General Term, that court was of the opinion that there was no evidence sustaining such findings and therefore ordered the judgment reversed on the facts as well as the law.

The duty, therefore, devolves upon us of determining whether or not this finding is sustained by the evidence. Upon this branch of the case there was a sharp conflict in the testimony which involved the credibility of the witnesses. The trial court in its opinion calls attention to this and states that "after a careful examination of the testimony of both sides, and giving to each the weight which it seems to me to deserve, by reason of its greater or less probability in connection with all the surrounding circumstances of the case, I have come to the conclusion that the facts are as testified to by the witnesses examined for the defense." Inasmuch as the trial judge had the advantage of seeing and hearing the witnesses deliver their testimony, he could form a more accurate judgment than a court on review as to their reliability and truthfulness. We shall, therefore, only call attention to the testimony of defendant's witnesses for the purpose of determining whether it is sufficient to authorize the finding of the trial court to which attention has been called. In the first place there appears to be no controversy in reference to the other facts to which we have called attention; that the premium had been paid upon three of the five policies issued and delivered to the plaintiff, and that it had not been paid upon the policy in suit or that of the Lion Fire Insurance Company, and that the plaintiff had been dunned for the balance of the premium that was due. It further appears that neither Spitzer nor the plaintiff knew which of the three policies had been paid for when the transaction to which we now call attention took place. Spitzer testified on behalf of the defendant that he called upon the plaintiff for the balance of the unpaid premium; that he had delivered the five policies to the plaintiff the latter part of September, and the latter part of October had received $100 from him as part payment for the

amount due; that he told him after dunning him about twenty-five times, that the matter was getting a little unpleasant with the companies; that he had to have the money or the policies; that he could not be bothered longer as he was losing his reputation with the companies and he could not afford to do so.  The plaintiff then turned around and said:  " Well, I don't want your policies," and he went to the safe.  " He said he had enough insurance and did not want any more, and he threw me out two policies; one on the Trans-Atlantic, and one on the Mechanics and Traders.  I took these policies down to Mr. Rieger and ordered them cancelled."  Rieger was called on behalf of the defendant and testified that he had been dunned so hard by the company that he went to Spitzer and told him that he wanted the thing fixed up; that he must bring the money or the policies; that the company would not let it run longer.  That Spitzer thereafter came to his office on the Monday afternoon before the fire and said that he had been down to see the plaintiff and that the plaintiff said to him that he could get along without the insurance of these two polices and that he had given them back to him ; that Spitzer thereupon handed him two policies, one on the Trans-Atlantic and the other on the Mechanics and Traders ; that he looked at the two policies and saw that they were two of the three on which the premium had been paid and that they were not the two that he wanted.   He further testified that the next morning he went to the office of the defendant and saw Mr. Talbot and told him that the plaintiff had sent word the afternoon previous that he would not pay for these policies, that he had insurance enough without them; that he had sent down two other policies by mistake so that he could not surrender his two ; that he told him he would go up and exchange the policies at the first opportunity and bring them down, and in the meantime he wanted Talbot to mark off his two policies; that Talbot grumbled somewhat at having the policies run for sixty days and then thrown back as not wanted, but said that he would consider them off.   Talbot had authority to cancel policies on the part of the defendant and

gave testimony corroborating the statement of Reiger as to what had transpired in reference to the cancellation of the policy in suit. Rieger further testified that that afternoon or the next morning he went and saw the plaintiff and asked him to pay for the time the policies had run which was two months and that he refused to do so ; that he then stated to the plaintiff that he had sent down two policies that had already been paid for and that he could take those policies and have them cancelled and get back money enough to pay the amount due for the two months on these policies and that these two policies had been already cancelled on the books of the company ; that that would cut him off from four policies or of an insurance of $4,400 ; that the plaintiff then wanted to know how much he owed, etc. Subsequently further testimony was given to the effect that he asked the plaintiff for the two policies on which the premium had not been paid and that the plaintiff stated that he did not have them there but had them at his home and said that he would bring them down on the following Saturday and give them to the witness and pay eleven dollars, the amount of the premiums for the two months, if the witness would deliver back the two policies delivered to Spitzer.

The General Term appears to have reached the conclusion that this testimony did not authorize the cancellation of the policy in suit; that it was the two policies delivered by the plaintiff to Spitzer that he authorized to be cancelled and not the two policies on which the premium had not been paid But did the plaintiff intend to authorize Spitzer to have those two policies cancelled ? He had paid the premium upon three of the five policies ; he did not know which, and being of foreign birth and evidently unfamiliar with the transaction of business of this character, doubtless supposed that it did not make any difference. He did not even keep or remember the names of the companies who had issued the two policies delivered up by him. He had been dunned time and again for the balance of the premium due. He knew that there was premium due upon two policies, and that it had been paid upon three. He

had concluded that he had insurance enough and could get along without the two on which the premium had not been paid, and it is quite evident to our minds that it was his intention to surrender up the policies on which the premium had not been paid and retain the other three, and that in handing over to' Spitzer the two policies on which the premium had been paid in full he made a mistake which the courts would readily rectify. If, therefore, it was his intention to surrender up the policies on which the premium had not been paid, Spitzer and Rieger in doing what they did to have the policy in suit cancelled merely carried out his directions as he himself intended.

It consequently appears to us that the finding of the trial court is sustained by the evidence.

The order of the General Term should be reversed, and the judgment of the trial court affirmed, with costs.

All concur.

Order reversed and judgment affirmed.